FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINA**
**ALEXANDRIA DIVISION**

2013 FEB -4   P 4: 24

CLERK US DISTRICT COURT
ALEXANDRIA. VIRGINIA

REMBRANDT SOCIAL MEDIA, LP

    Plaintiff,

    v.

FACEBOOK, INC. and
ADDTHIS, INC.

    Defendants.

Civil Action No. 1:13 cv 158
         TSE /TRJ

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, for its complaint, alleges as follows:

### The Parties

1.    Plaintiff Rembrandt Social Media, LP ("Rembrandt") is a Virginia limited partnership having its principal place of business at 401 City Avenue, Suite 900, Bala Cynwyd, Pennsylvania 19004.

2.    Defendant Facebook, Inc. ("Facebook") is a Delaware corporation with its headquarters at 1601 Willow Road, Menlo Park, California 94025.

3.    Defendant AddThis, Inc. ("AddThis") is a Delaware corporation with its headquarters and principal place of business in this district at 1595 Spring Hill Road, Suite 300, Vienna, Virginia 22182.

### Jurisdiction, Venue, and Joinder

4.    This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction over this action under 28 U. S. C. §§ 1331 and 1338(a).

5.     This Court has personal jurisdiction over Facebook and AddThis (collectively "Defendants") because, among other things, the Defendants have committed acts of infringement in Virginia, including in this district, and have engaged in continuous and systematic activities in Virginia.

6.     Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b) because, among other things, Defendants have committed acts of infringement in this judicial district, and are subject to personal jurisdiction here.

7.     Joinder is proper under 35 U.S.C. § 299 because, as explained in Count II, Facebook and AddThis are jointly and severally liable for infringement arising out of the same series of transactions or occurrences relating to the use of the same system, and questions of fact common to both defendants will arise in the action.

### Facts

8.     Joannes Jozef Everardus Van Der Meer, now deceased, was a computer scientist, a computer programmer, and an inventor.  During the 1990s, at a time when the World Wide Web was in its infancy, Van Der Meer was a pioneer in the development of user-friendly Web-based technologies.

9.     On September 1, 1998, Van Der Meer filed two related patent applications with the United States Patent and Trademark Office ("USPTO").  The first of these applications, entitled "METHOD AND APPARATUS FOR IMPLEMENTING A WEB PAGE DIARY," issued on July 2, 2002 as U.S. Patent No. 6,415,316 ("the '316 patent").  The '316 patent described and claimed a novel technology that gave ordinary people—those without training in the computer arts—the ability to create and use what Van Der Meer called a personal diary, and what today would be called "social media," on the World Wide Web.  Using his system,

2

ordinary people could collect personal information and third-party content, organize the information chronologically on a personalized web page, and share the information with a selected group of people, such as the end user's friends, through the use of user-settable privacy levels.

10.    Van Der Meer's second application, entitled "SYSTEM AND METHOD FOR GENERATION, TRANSFERRING, AND USING AN ANNOTATED UNIVERSAL ADDRESS," was issued by the USPTO on September 11, 2001 as United States Patent No. 6,289,362 ("the '362 patent"). It described and claimed a related set of technologies that enabled the automatic transfer, at a user's request, of third-party content from a content-provider's website to the user's personal diary page. These techniques further increased the utility of Van Der Meer's "personal diary" concept, by allowing users to collect interesting content as they browsed the Web, simply by clicking on buttons on the websites that they visited.

11.    While these applications were pending and after they issued as patents, Van Der Meer worked to commercialize his inventions. He formed a company called AIdministrator Nederland B.V. (which later did business as, and hereinafter will be referred to as, "Aduna") and began work on implementing the ideas contained in his patents. He registered a domain name—www.surfbook.com—and separately launched a pilot system that utilized some of the innovations described in his patents. Unfortunately, Van Der Meer passed away in June of 2004, before he was able to fully realize his vision.

12.    After his death, Van Der Meer's family, including his widow, sought a way to achieve the credit and compensation that his inventions—and his pioneering work in the field of social media—deserved. To help achieve this goal, the family enlisted the help of Rembrandt IP

Management, LLC, which is an affiliated company to, and acts as an agent for, the plaintiff in this action. Rembrandt and Rembrandt IP Management, LLC, work together to help inventors and patent owners, who often do not have the requisite capital or expertise, enforce their rights against companies that use their inventions without paying for them. The family and Rembrandt are now working together to enforce the '316 and '362 patents.

13.     Rembrandt is the owner by assignment of both the '316 patent and the '362 patent, copies of which are attached to this Complaint as Exhibit A and Exhibit B, respectively.

14.     On or before September 2008, the law firm that had represented Aduna in connection with the '316 and '362 patents, and had prosecuted the applications for those patents, took over the prosecution of a Zuckerberg patent application and has since continued to represent Facebook in patent matters.

15.     On or about June 2012, Facebook acquired U.S. Patent No. 7,907,966 (the '966 patent), on the face of which the '362 patent is listed as prior art. Upon information and belief, the acquisition of the '966 patent either reinforced Facebook's prior knowledge of the '316 and '362 patents, or made Facebook aware of the '362 patent and of the related '316 patent. Shortly thereafter, in or about July 2012, the law firm that had been representing Aduna and Facebook for an overlapping period of almost four years terminated its relationship with Aduna.

16.     Today, Facebook owns and operates the famous and widely used website located on the World Wide Web at the web address of www.facebook.com (the "Facebook website"). Although Mark Zuckerberg did not start what became Facebook until 2003, it bears a remarkable resemblance, both in terms of its functionality and technical implementation, to the personal web page diary that Van Der Meer had invented years earlier.

17.     Like the Van Der Meer inventions, the Facebook website gives ordinary

people—those without special training—the ability to create a personal webpage diary, comprised of personal information and third-party content, and to arrange it chronologically. Facebook organizes (or has organized) this information in various presentation formats, including the "wall," the "timeline," and the "news feed," and provides the user with the ability to share specific diary entries with a selected group of people, such as the user's friends, through the use of user-settable privacy levels.

18.     In addition, Facebook uses its website to obtain advertising revenue by placing advertisements on millions of personal diary pages. This advertising feature was envisioned by Van Der Meer, and was described and claimed in the '316 patent.

19.     Moreover, and again like the Van Der Meer inventions, Facebook provides users with the ability to automatically transfer content from third party web sites to their Facebook diaries, simply by clicking a "share" or "like" button on one of those sites.

20.     Facebook encourages the use of its "share" and "like" buttons on third party web sites by distributing program code (hereinafter "the Facebook transfer script") that allows web site operators to implement these features on their sites. When users select the Facebook "like" or "share" buttons on such sites, the Facebook transfer script interfaces with the Facebook web site, and causes additional code (hereinafter the "Facebook transfer applet") to execute in the user's browser. The Facebook transfer applet ultimately effectuates the transfer of content from the third party website to the user's Facebook diary.

21.     Defendant AddThis is one of the largest and most widely used social bookmarking services and was an early partner with Facebook. Facebook and AddThis work together to disseminate and enhance the functionality of the Facebook's "like" and "share" buttons on third party websites. The CEO of AddThis, Mr. Ramsey McGrory, has said: "We

have a long and positive relationship with Facebook. We were an early partner for them as they were growing to scale. We continue to be on the tool side, on the sharing and tool side."

22.    One of the AddThis tools is a particular bookmarking service that can be integrated into a website with the use of a "web widget" such as "addthis_widget.js." Once the widget is added, visitors to the website can "bookmark" an item using a variety of services, such as Facebook.

23.    The AddThis web widget acts like an enhanced version of the Facebook transfer script, and is used by third party web site operators in lieu of the transfer script provided by Facebook. Like the Facebook transfer script, however, the AddThis web widget relies upon, and cooperates with, the Facebook transfer applet, provided from the Facebook web site, to effectuate transfer of content from a given website to Facebook.

**COUNT I**
(Facebook's Infringement of the '316 patent)

24.    Rembrandt incorporates paragraphs 1-23 by reference.

**Direct Infringement**

25.    Facebook has directly infringed and continues to directly infringe the '316 patent in this judicial district and elsewhere in the United States. Facebook's infringement includes, without limitation: (1) making and using the apparatus of claims 17 and claims dependent thereon, the computer-code products of claim 28 and claims dependent thereon, and the system of claim 39, and (2) practicing the method of claims 1 and 6 and claims dependent thereon.

26.    Specifically, Facebook's direct infringement consists of making and using the system put into service by Facebook servers that allows an end user to receive and interact with the Facebook diary pages. This system includes at least computer software that performs the following activities:

6

- Sending program code, including BigPipe.js, from the Facebook servers to an end user's computer browser;

- Sending content to the end user's browser, including the "pagelets" that are used by the BigPipe.js program;

- Sending a page design template and privacy level information to the end user's browser;

- Assembling the page for display to the end user;

- Allowing the end user to request changes in content information on the page; and

- Sending updated content information to the user in accordance with the user's request.

27. As a result of the computer software and hardware that performs these activities, Facebook is liable for literal direct infringement of the '316 patent pursuant to 35 U.S.C. § 271(a).

28. To the extent that any fact finder deems any of the elements of the '316 patent claims not literally satisfied by the structure or use of the Facebook system, these elements are satisfied under the doctrine of equivalents.

### Indirect Infringement

29. Facebook is also liable for indirectly infringing the '316 patent in this judicial district and elsewhere in the United States by inducing direct infringement in violation of 35 U.S.C. § 271(b) and contributing to direct infringement in violation of 35 U.S.C. § 271(c).

30. Upon information and belief, Facebook had actual and imputed knowledge of the '316 patent prior to the inception of this action and at least as early as the period of time during which the same law firm represented both Facebook and Aduna. In addition, Facebook has been aware of the '316 patent since at the least service of this Complaint.

31. Upon information and belief, upon gaining knowledge of the '316 patent, it was,

or became, apparent to Facebook that the operation of its website resulted in infringement of the '316 patent. Upon information and belief, Facebook continued to engage in the aforementioned activities constituting inducement of infringement, notwithstanding its knowledge (or willful blindness thereto) that the activities it was inducing would result in infringement of the '316 patent.

32.     The direct infringement induced and contributed to by Facebook is the use of the Facebook website by end users acting alone or, in the case of method claims, in combination with Facebook. The directly infringing use includes use of the computer software that performs the activities set forth in paragraph 26 above.

33.     Facebook encourages direct infringement of the '316 patent by widely publicizing its website and by providing on its website tools and instructions for conducting the directly infringing use.

34.     With respect to apparatus claim 17, computer code product claim 28, and system claim 39, and their dependent claims, Facebook induces infringement by encouraging, facilitating and instructing users to use the inventions while they are visiting the Facebook website. Facebook does this by, without limitation, modifying, in response to user actions, the configuration of user computers and by encouraging users to use their computers, so modified, to interact with the Facebook website, thereby inducing use of the claimed inventions.

35.     With respect to method claims 1 and 6 and their dependent claims, Facebook induces infringement by encouraging and instructing users who visit the Facebook website to perform some or all of the claimed method steps, while in certain instances performing certain of the method steps itself in coordination with such performance by users.

36.     Facebook's specific intent to cause its users to directly infringe can also be

inferred from its knowledge of the '316 patent and from the striking similarity between the '316 patent and the Facebook website. Both the '316 patent and the Facebook website feature sending from a server to a user's browser both content and program code for creating a personal diary page, controlling access to the page in accordance with a privacy level set by the user, and updating the page as requested by the user.

37.    Facebook contributes to the direct infringement by providing software components for operating its website and interacting with end user browsers, including the software components referred to in paragraph 26. These software components are known by Facebook to be especially made or adapted for use in the infringing Facebook system. These components are not staple articles of commerce and have no substantial non-infringing use as they are necessarily required to interact with the infringing Facebook website as whole to perform their very specific functions.

<strong><u>271(f) Infringement</u></strong>

38.    Facebook is liable for infringement under 35 U.S.C. § 271(f) when the end users are outside the United States by supplying its software components for combination in browsers located outside the United States.

<strong><u>Willful Infringement</u></strong>

39.    Facebook has willfully infringed, and continues to willfully infringe the '316 patent.

40.    Upon information and belief, Facebook had actual and imputed knowledge of the '316 patent at least during the period of time when the same law firm represented Facebook and Aduna. In addition, Facebook has been aware of the '316 patent since at least service of this Complaint.

41.    Upon information and belief, upon gaining knowledge of the '316 patent, it was,

9

or became, apparent to Facebook that the operation of its website resulted in infringements of the '316 patent. Nevertheless, Facebook continued to operate its website in an infringing fashion, despite its knowledge that there was an objectively high likelihood that its actions constituted infringement of the '316 patent.

### Remedy for Facebook's Infringement

42.     For past infringement, Rembrandt has been damaged as a result of Facebook's conduct described in this Count. Facebook is therefore liable to Rembrandt under 35 U.S.C. § 284 for past damages in an amount that adequately compensates Rembrandt for Facebook's infringing conduct but no less than a reasonable royalty, together with interest and costs as fixed by this Court. That amount should be trebled because Facebook's infringement has been willful.

43.     For future infringement, Rembrandt will be irreparably harmed unless this Court issues a permanent injunction prohibiting Facebook, its agents, servants, employees, representatives, and all others acting in active concert with Facebook, from infringing the '316 patent. Alternatively, Rembrandt is entitled to damages in lieu of an injunction, in an amount consistent with the fact that for future infringement Facebook will be an adjudicated infringer of a valid patent. That amount should be trebled in view of the fact that the future infringement will be willful as a matter of law.

### COUNT II
(Infringement of the '362 patent by Facebook and AddThis
based on the same transactions and occurrences)

44.     Rembrandt incorporates paragraphs 1-23 by reference.

### Direct Infringement

45.     Based on the same transactions and occurrences, Facebook and AddThis have

both directly infringed and continue to directly infringe the '362 patent in this judicial district and elsewhere in the United States. This direct infringement includes, without limitation, making and using the computer system recited in claim 7.

46. Facebook's and AddThis's direct infringement consists of making and using the system put into service by their respective servers that allows an end user to "like" or "share" content and transfer an annotated universal address for the content to the user's Facebook page. Upon information and belief, this system includes at least the following hardware and software elements:

- AddThis memory that stores a software transfer script included in "addthis_widget.js." that, when executed, requests a Facebook transfer applet that (1) causes a pop-up window to be displayed when the "like" button is clicked and (2) allows the end user to post the liked content with a link to the user's page saved in Facebook memory;

- Facebook memory for storing a database containing liked content with associated links and the above-mentioned transfer applet;

- An Internet browser on the end user's computer that is coupled to both the AddThis memory and the Facebook memory and which executes the transfer script and transfer applet in order to transfer liked content with associated links to the database saved in the Facebook memory;

- Computer code defining the liked content, including a link to it, and annotations (e.g., to the title, text, and image) that are authored by the content provider and control its presentation.

47. Because both Facebook and AddThis put this system into service and obtain a beneficial use from it, the defendants are liable for literal direct infringement of the '362 patent pursuant to 35 U.S.C. § 271(a).

48. To the extent that any fact finder deems any of the elements of the '362 patent claims not literally satisfied by the above recited hardware and software components, these elements are nevertheless satisfied under the doctrine of equivalents.

**Indirect Infringement**

49.     Based on the same transactions and occurrences, Facebook and AddThis are also both liable for indirectly infringing the '362 patent in this judicial district and elsewhere in the United States by inducing direct infringement in violation of 35 U.S.C. § 271(b) and by contributing to direct infringement in violation of 35 U.S.C. § 271(c).

50.     Facebook's and AddThis's indirect infringement consists of inducing and contributing to directly infringing use of the system described in paragraph 46 by end users. Facebook also induces and contributes to AddThis's direct infringement.

51.     Upon information and belief, Facebook had actual and imputed knowledge of the '362 patent prior to the inception of this action and at least as early as the period of time during which the same law firm represented both Facebook and Aduna.  In addition, Facebook and AddThis have been aware of the '362 patent since at least the service of this Complaint.

52.     Upon information and belief, upon gaining knowledge of the '362 patent, it was, or became, apparent to Facebook that the operation of the system described in paragraph 46 resulted in infringement of the '362 patent.  Upon information and belief, Facebook continued to engage in the aforementioned activities constituting inducement of infringement, notwithstanding its knowledge (or willful blindness thereto) that the activities it was inducing would result in infringement of the '362 patent.

53.     Facebook and AddThis induce end users to directly infringe by encouraging, facilitating, and instructing end users to make and use the inventions while they are visiting content-provider websites. They do this by, without limitation, modifying, in response to user actions, the configuration of user computers, thereby making the claimed invention, and by encouraging users to use their computers, so modified, to interact with the Facebook website, thereby inducing use of the claimed inventions.

54.    Facebook and AddThis encourage end users to directly infringe by placing the AddThis widget and, through the AddThis widget, the Facebook "like button" icon, on third party websites visited by end users. Facebook encourages end users to use this "like" feature by providing instructions on its website on how to use the "like" button and by causing the button to appear on millions of webpages around the world. Similarly AddThis encourages end users to use this "like" feature, and thus Facebook's transfer applet, by placing its own share icon on websites as an intermediate route to Facebook's icon and by providing instructions on its website on how to use the AddThis icon.

55.    Facebook's and AddThis's specific intent to cause end users to directly infringe by using the system described in paragraph 46 can be inferred from their knowledge of the '362 patent and from the striking similarity between that system and the '362 patent. Both the '362 patent and the system described in paragraph 46 feature a convenient and automatic way of installing website content to an end user's diary page, by storing and providing on request a transfer applet for carrying out the installation.

56.    Facebook encourages AddThis to directly infringe by making its transfer applet and icon available to AddThis and providing instruction for their use. Indeed, Facebook aggressively encourages use of its applet by providing instructions on its website to cause its icon to appear on millions of webpages around the world, both directly and through AddThis.

57.    Facebook's specific intent to cause AddThis to directly infringe by using the system described in paragraph 46 can be inferred from its knowledge of the '362 patent and from the striking similarity between the system and the '362 patent. Both the '362 patent and the system described in paragraph 46 feature a convenient and automatic way of installing website content to an end user's diary page, by storing and providing on request a transfer applet

for carrying out the installation.

58.     Facebook and AddThis also contribute to the direct infringement of end users by providing the software components referred to in paragraph 46. These software components are known by Facebook and AddThis to be especially made or adapted for use in the infringing system. And these components are not staple articles of commerce and have no substantial non-infringing use as they are necessarily required to interact with the infringing system as whole to perform their very specific functions.

59.     Facebook contributes to AddThis's direct infringement by providing portions of the software components referred to in paragraph 46. These software components are known by Facebook to be especially made or adapted for use in the infringing system. And these components are not staple articles of commerce and have no substantial non-infringing use as they are necessarily required to interact with the infringing system as whole to perform their very specific functions.

## 271(f) Infringement

60.     Facebook and AddThis are liable for infringement under 35 U.S.C. § 271(f) when the end users are outside the United States by supplying their respective software components for combination in browsers located outside the United States.

## Willful Infringement

61.     Facebook has willfully infringed, and continues to willfully infringe, the '362 patent.

62.     Upon information and belief, Facebook had actual and imputed knowledge of the '362 patent at least during the period of time when the same law firm represented Facebook and Aduna. In addition, Facebook has been aware of the '362 patent since at least service of this

Complaint.

63.     Upon information and belief, upon gaining knowledge of the '362 patent, it was, or became, apparent to Facebook that the operation of its website resulted in infringement of the '362 patent.  Nevertheless, Facebook continued to operate its website in an infringing fashion, despite its knowledge that there was an objectively high likelihood that its actions constituted infringement of the '362 patent.

64.     AddThis too will have notice of the '362 patent at least since the service of this Complaint.  To the extent that it continues to facilitate the Facebook "like button" functionality in the manner claimed in the '362 patent after that, it too will be acting despite an objectively high likelihood that its actions constituted infringement of a valid patent and will be thus liable for willful infringement.

### Remedy for Defendants' Infringement

65.     For past infringement, Rembrandt has been damaged as a result of Defendants' infringement of the '362 patent by the conduct described in this Count.  The Defendants are therefore jointly and severally liable to Rembrandt for past damages under 35 U.S.C. § 284 in an amount that adequately compensates Rembrandt for their infringing conduct but no less than a reasonable royalty, together with interest and costs as fixed by this Court.  That amount should be trebled because Facebook's infringement has been willful.

66.     For future infringement, Rembrandt will be irreparably harmed unless this Court issues a permanent injunction prohibiting the Defendants, their respective agents, servants, employees, representatives, and all others acting in active concert with Defendants from infringing the '362 patent.  Alternatively, Rembrandt is entitled to damages in lieu of an injunction, in an amount consistent with the fact that for future infringement the Defendants will

be adjudicated infringers of a valid patent. That amount should be trebled in view of the fact that the future infringement will be willful as a matter of law.

## COUNT III
(Facebook's separate infringement of the '362 patent)

67.    Rembrandt incorporates paragraphs 1-23 by reference.

### Direct Infringement

68.    Facebook has directly infringed and continues to directly infringe the '362 patent in this judicial district and elsewhere in the United States. This direct infringement includes, without limitation, making and using the computer system recited in claim 7.

69.    Facebook's direct infringement consists of making and using the system put into service by its servers that allows a user to "like" or "share" content and transfer an annotated universal address for the content to the user's Facebook page. Upon information and belief, this system includes at least the following hardware and software elements:

- Third-party content-provider webserver memory that stores a software program provided by Facebook (transfer script) that, when executed, requests certain other Facebook software (transfer applet) that (1) causes a pop-up window to be displayed when the "like" button is clicked and (2) allows the end user to post the liked content with a link to the user's "wall" or "news feed" saved in Facebook memory;

- Facebook memory for storing a database containing liked content with associated links and the above-mentioned transfer applet;

- An Internet browser on the end user's computer that is coupled to both the third-party content-provider webserver memory and the Facebook memory and which executes the transfer script and transfer applet in order to transfer liked content with associated links to the database saved in the Facebook memory;

- Computer code defining the liked content, including a link to it, and annotations (e.g., to the title, text, and image) that are authored by the content provider and control its presentation.

70.    Because Facebook puts this system into service and obtains a beneficial use from it, Facebook is liable for literal direct infringement of the '362 patent pursuant to 35 U.S.C. §

271(a).

71.     To the extent that any fact finder deems any of the elements of the '362 patent claims not literally satisfied by the above recited hardware and software components, these element are satisfied under the doctrine of equivalents.

### Indirect Infringement

72.     Facebook is liable for indirectly infringing the '362 patent in this judicial district and elsewhere in the United States by inducing direct infringement in violation of 35 U.S.C. § 271(b) and contributing to direct infringement in violation of 35 U.S.C. § 271(c).

73.     Facebook's indirect infringement consists of inducing and contributing to the use of the system described in paragraph 69 by end users, and by inducing and contributing to the direct infringement of the system by third-party website owners.

74.     Upon information and belief, Facebook had actual and imputed knowledge of the '362 at least during the period of time when the same law firm represented both Facebook and Aduna. In addition, Facebook has been aware of the '362 patent since at least the service of this Complaint.

75.     Upon information and belief, upon gaining knowledge of the '362 patent, it was, or became, apparent to Facebook that the operation of the system described in paragraph 69 resulted in infringement of the '362 patent. Upon information and belief, Facebook continued to engage in the aforementioned activities constituting inducement of infringement, notwithstanding its knowledge (or willful blindness thereto) that the activities it was inducing would result in infringement of the '362 patent.

76.     Facebook induces end users to directly infringe by encouraging, facilitating, and instructing end users to make and use the inventions while they are visiting content-provider

websites. Facebook does this by, without limitation, modifying, in response to user actions, the configuration of user computers, thereby making the claimed invention, and by encouraging users to use their computers, so modified, to interact with the Facebook website, thereby inducing use of the claimed inventions

77.     Facebook encourages end users to directly infringe by placing the Facebook "like button" on millions of third party websites visited by end users. Facebook encourages end users to use this "like" feature by providing instructions on its website on how to use the "like" button.

78.     Facebook's specific intent to cause end users to infringe by using the system described in paragraph 69 can be inferred from its knowledge of the '362 patent and from the striking similarity between the system and the '362 patent. Both the '362 patent and the system described in paragraph 69 feature a convenient and automatic way of installing website content to an end user's diary page, by storing and providing on request a transfer applet for carrying out the installation.

79.     Facebook's specific intent to cause third-party website owners to infringe by using the system described in paragraph 69 can be inferred from its knowledge of the '362 patent and from the striking similarity between the system and the '362 patent. Both the '362 patent and the system described in paragraph 69 feature a convenient and automatic way of installing website content to an end user's diary page, by storing and providing on request a transfer applet for carrying out the installation.

80.     Facebook also contributes to the direct infringement by end users and by third-party website owners by providing the software components referred to in paragraph 69. These software components are known by Facebook to be especially made or adapted for use in the

infringing system. And these components are not staple articles of commerce and have no substantial non-infringing use as they are necessarily required to interact with the infringing system as whole to perform their very specific functions.

### 271(f) Infringement

81.     Facebook is liable for infringement under 35 U.S.C. § 271(f) when either the end users or the third-party website server is outside the United States by supplying its software components for combination outside the United States.

### Willful Infringement

82.     Facebook has willfully infringed, and continues to willfully infringe, the '362 patent.

83.     Upon information and belief, Facebook had actual and imputed knowledge of the '362 patent at least during the period of time when the same law firm represented Facebook and Aduna. In addition, Facebook has been aware of the '362 patent since at least service of this Complaint.

84.     Upon information and belief, upon gaining knowledge of the '362 patent, it was, or became, apparent to Facebook that the operation of its website resulted in infringement of the '362 patent. Nevertheless, Facebook continued to operate its website in an infringing fashion, despite its knowledge that there was an objectively high likelihood that its actions constituted infringement of the '362 patent.

### Remedy for Facebook's Infringement

85.     For past infringement, Rembrandt has been damaged as a result of Facebook's infringement of the '362 patent by the conduct described in this Count. Facebook is therefore liable to Rembrandt for past damages under 35 U.S.C. § 284 in an amount that adequately compensates Rembrandt for Facebook's infringing conduct but no less than a reasonable

royalty, together with interest and costs as fixed by this Court. That amount should be trebled because Facebook's infringement has been willful.

86.    For future infringement, Rembrandt will be irreparably harmed unless this Court issues a permanent injunction prohibiting Facebook, its respective agents, servants, employees, representatives, and all others acting in active concert with Facebook from infringing the '362 patent. Alternatively, Rembrandt is entitled to damages in lieu of an injunction, in an amount consistent with the fact that for future infringement the Facebook will be an adjudicated infringer of a valid patent. That amount should be trebled in view of the fact that the future infringement will be willful as a matter of law.

## JURY DEMAND

87.    Rembrandt hereby respectfully demands a jury trial on all issues appropriately triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Rembrandt prays that it have judgment against Defendants entered as follows:

(1) A decree that Facebook has infringed the '316 and '362 patents, and that such infringement was willful;

(2) A decree that AddThis and Facebook have jointly infringed the '362 patent, and that such infringement was willful;

(3) An award of damages for past infringement;

(4) An award of treble damages for past infringement as a result of the Defendants' willful infringement;

(5) A decree addressing future infringement that either (i) awards a permanent injunction

enjoining Defendants and their agents, servants, employees, affiliates, divisions, and subsidiaries, and those in association with Defendants, from infringing the '316 and '362 patents or (ii) awards damages for future infringement in lieu of an injunction, in an amount consistent with the fact that for future infringement the Defendants will be adjudicated infringers of valid patent, and trebles that amount in view of the fact that the future infringement will be willful as a matter of law.

(6) An award of increased damages pursuant to 35 U.S.C. § 284;

(7) A decree that this case is exceptional under 35 U.S.C. § 285;

(8) An award of all costs of this action, including attorneys' fees and interest; and

(9) Such further relief, at law or in equity, to which Rembrandt is entitled.

Dated: February 4, 2013

Respectfully submitted,

FISH & RICHARDSON P.C.

By: _____

Ahmed J. Davis (Va. Bar No. 43982)
Linhong Zhang
1425 K Street N.W., 11th Floor
Washington, D.C. 20005
Telephone: (202) 783-5070
Facsimile:  (202) 783-2231

Thomas M. Melsheimer
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone:  (214) 747-5070
Facsimile:  (214) 747-2091

Robert E. Hillman
Lawrence K. Kolodney
One Marina Park Drive
Boston, MA 02110
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

John S. Goetz
601 Lexington Ave., 52nd Floor
New York, NY 10022
Telephone:  (212) 765-5070
Facsimile: (212) 258-2291

*Attorneys for Plaintiff Rembrandt Social Media LP*