IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| REMBRANDT SOCIAL MEDIA, LP<br><br>        Plaintiff,<br><br>   v.<br><br>FACEBOOK, INC.<br><br>        Defendant. | C.A. No. 1:13-cv-158(TSE)(TRJ) |

**REMBRANDT'S MEMORANDUM IN OPPOSITION TO
FACEBOOK'S MOTION TO DECLARE THIS AN EXCEPTIONAL
<u>CASE AND FOR ATTORNEY'S FEES AND EXPENSES</u>**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................1

II.     ARGUMENT ..........................................................................................5

      A.     Even Under *Octane Fitness* an Award of Fees is Only
            Appropriate in the Rare Case in which the Losing Party Acted
            Unreasonably ...............................................................................5

      B.     This Was Not an Exceptional Case Under *Octane Fitness*...................................7

           1.     Rembrandt's Prosecution of this Suit Was at All Times
                  Reasonable and Based on Substantially Justified Legal
                  Theories...........................................................................7

                  a.     Rembrandt Filed This Case in Good Faith ....................7

                  b.     Rembrandt Reasonably Scaled Back its
                          Infringement Claims During the Course of
                          Discovery ....................................................................9

                  c.     Rembrandt Presented Reasonable Damages
                          Theories that Were Well Grounded in Federal
                          Circuit Precedent.......................................................11

                  d.     Rembrandt Otherwise Prosecuted its Case in a
                          Reasonable Fashion ...................................................14

             2.     Facebook's Disparagement of Rembrandt Does not
                    Make This an Exceptional Case...........................................17

      C.     Rembrandt Reserves the Right to Challenge the Size of
            Facebook's Fee Request Once Supporting Documentation Is
            Provided ......................................................................................20

      D.     This Court Should Defer Ruling on this Motion Until
            Rembrandt's Other Post-Trial Motions Are Resolved........................................20

III.    CONCLUSION.......................................................................................21

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Alexander v. Chesapeake, Potomac, and Tidewater Books, Inc.*,
    60 F. Supp. 2d 544 (E.D. Va. 1999) (Ellis, J.)............................................................5

*Apple Inc. v. Motorola, Inc.*,
    ___ F.3d ___, 2014 WL 1646435 (Fed. Cir. Apr. 25, 2014) ...............................2, 13

*Bianco v. Globus Med., Inc.*,
    2014 WL 1904228 (E.D. Tex. May 12, 2014) (Bryson, J., sitting by
    designation)................................................................................................................6

*Classen Immunotherapies, Inc. v. Biogen Idec*,
    2014 WL 2069653 (D. Md. May 14, 2014) ...............................................................6

*CreAgri, Inc. v. Pinnaclife, Inc.*,
    2014 WL 2508386 (N.D. Ca. June 3, 2014) ...............................................................6

*CSX Transp., Inc. v. Peirce*,
    Civ. No. 5:05CV202, 2013 U.S. Dist. LEXIS 137552 (N.D. W. Va. Sep. 25,
    2013) ........................................................................................................................20

*Dataquill Ltd. v High Tech Computer Corp.*,
    No. 08cv543–IEG(BGS), 2012 U.S. Dist. LEXIS 53164 (S.D. Cal. Apr. 16,
    2012) ........................................................................................................................13

*EON Corp. IP Holdings, LLC v. FLO TV Inc.*,
    2014 WL 2196418 (D. Del. May 27, 2014)...............................................................6

*Fogerty v. Fantasy, Inc.*,
    114 S. Ct. 1023 (1994)...............................................................................................5

*Fujitsu Ltd. v Belkin Int'l*,
    No. 10-CV-03972-LHK, 2012 U.S. Dist. LEXIS 164410 (N.D. Cal. Nov. 16,
    2012) ........................................................................................................................13

*Home Gambling Network v. Piche*,
    2014 WL 2170600 (D. Nev. May 22, 2014) ..............................................................6

*Intellect Wireless, Inc. v. Sharp. Corp.*,
    ___ F. Supp. 2d ___, 2014 WL 2443871 (N.D. Ill. May 30, 2014)..........................6

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012)....................................................................................12

*Lumen View Tech., LLC v. Findthebeset.com, Inc.*,
   ___ F. Supp. 2d ___, 2014 WL 2440867 (S.D. N.Y. May 30, 2014) ........................................6

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysgteme GmbH*,
   603 F.3d 943 (Fed. Cir. 2010) ...........................................................................................7, 10

*Octane Fitness LLC v. ICON Health and Fitness, Inc.*,
   134 S. Ct. 1749 (2014) ...............................................................................................5, 6, 7, 18

*Precision Links, Inc. v. USA Prods. Grp., Inc.*,
   2014 WL 2861759 (W.D. N.C. June 24, 2014) .........................................................................6

*Reed v. Health and Human Services*,
   774 F.2d 1270 (4th Cir. 1985), *rev'd on other grounds*, *Lukhard v. Reed*, 481
   U.S. 368 (1987) .......................................................................................................................20

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010) ..................................................................................................6

*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*,
   781 F.2d 198 (Fed. Cir. 1986) ..................................................................................................5

*Thinkoptics, Inc. v. Nintendo of Am., Inc.*,
   Case No. 6:11-cv-465, Dkt. No. 435, at 4 (E.D. Tex. June 21, 2014) ....................................13

*Virnetx Inc. v. Cisco Sys.*,
   No. 6:10-CV-417, 2013 U.S. Dist. LEXIS 28223 (E.D. Tex. Mar. 1, 2013) .........................13

**Statutes**

35 U.S.C. § 285 ..............................................................................................................................21

**Other Authorities**

Federal Rule of Civil Procedure 50 ..........................................................................................1, 20

Federal Rule of Civil Procedure 59 ..............................................................................................20

Gregory L. Fordham, *Using Keyword Search Terms in E-Discovery and How
   They Relate to Issues of Responsiveness, Privilege, Evidence Standards, and
   Rube Goldberg*, 15 Rich. J.L. & Tech. 8 (2009) ....................................................................16

## I.       INTRODUCTION

In seeking an award of attorney's fees in this case, Facebook attempts to caricature Rembrandt as an out-of-control patent troll, recklessly asserting untenable and overblown infringement claims using scorched earth tactics driven only by greed.  Under Facebook's theory, Rembrandt's conduct in this litigation, and the supposed weakness of its claims, make this the "rare" case in which a fee award is justified.

When we look beyond Facebook's hyperbolic rhetoric, and its speculation about Rembrandt's motives, the facts appear quite differently.  Contrary to Facebook's characterization, Rembrandt did not "spot an opportunity" and "induce" Aduna to sell it the patents-in-suit.  Rather, it was Aduna that approached Rembrandt, seeking Rembrandt's assistance—both in terms of finance and expertise—in enforcing Aduna's patent rights. Rembrandt brought this case for entirely legitimate reasons—because it believed that the inventions claimed in the van der Meer patents were, in fact, being used by Facebook and AddThis without authorization, and to seek compensation (both for itself and for the family of the deceased inventor) for the value of that use.  Rembrandt developed a liability case in which a reasonable jury could (and in Rembrandt's view should) have gone the other way.  The Court recognized that Rembrandt had a reasonable case when it denied Facebook's motion for summary judgment and also did not grant Facebook's Rule 50(a) motion for judgment as a matter of law—letting the issue go to the jury.[1]

Facebook's principal complaint—that Rembrandt supposedly pursued a clearly flawed damages theory, and then insisted on taking this case to trial even after the theory was stricken

---

[1] (Order, Dkt. No. 353 (denying Facebook's motion for summary judgment); Trial Tr. 06/11/14 PM at 120:6-23 (noting that the Court was taking the JMOL under advisement but then ultimately letting the issue go to the jury).)

under *Daubert*—ignores the procedural history of this case, and hardly demonstrates the type of unreasonable litigation conduct or implausible theories upon which discretionary fee awards are typically based. Contrary to Facebook's suggestion that Rembrandt's damages theory was beyond the pale, this Court expressly ruled to the contrary—that "there is substantial ground for difference of opinion" on whether Rembrandt's theory was legally sound. That conclusion is particularly true in light of the Federal Circuit's subsequent *Apple v. Motorola* decision, which makes clear that damages must be assessed in light of the "full scope of the infringed claims."[2] Rembrandt could hardly be faulted for pursuing a theory over which reasonable minds might differ.

Nor can Rembrandt be faulted for taking this case to trial. Once the Federal Circuit refused to review this Court's *Daubert* order on an interlocutory basis, Rembrandt simply had no choice but to go to trial in order to obtain appellate review. Facebook's contrary argument—that Rembrandt could have stipulated to judgment because the Court's orders deprived it of any entitlement to relief—is directly contrary to this Court's conclusion that equitable remedies were still available should Rembrandt prevail and that a trial was necessary to reach a final judgment.

For similar reasons, it was not unreasonable for Rembrandt—facing the unusual prospect of having to prove damages without the benefit of its expert's original damages theory—to seek the Court's guidance as to what damages-related evidence the Court would permit to be presented to the jury. Rembrandt's request to be able to present a revised damages theory in light of the Court's *Daubert* ruling was not only not unreasonable, it was in fact consistent with the normal practice of many district courts throughout the country, consistent with the Federal Circuit's order denying review, and would not have prejudiced Facebook. While this Court

---

[2] *Apple Inc. v. Motorola, Inc.*, ___ F.3d ___, 2014 WL 1646435, at *22 (Fed. Cir. Apr. 25, 2014).

ultimately ruled that no such evidence would be presented, that result was not self-evident at the time of Rembrandt's request, as the multiple rounds of briefing and argument ordered by the Court made clear.

Facebook's other significant allegation of unreasonable litigation conduct—that Rembrandt asserted (and then dropped) supposedly weak claims against AddThis merely to secure venue in this district—rests on little more than misinformed speculation.  Rembrandt sued AddThis because, as Rembrandt explained in its factually detailed complaint, AddThis technology was frequently used—millions of times a day—to implement the "Like" and "Share" functionality that formed an important part of Rembrandt's original claim against Facebook. Rembrandt therefore believed, at the outset of this case, that AddThis was a direct infringer against whom it had a substantial claim.  To be sure, Rembrandt subsequently settled with AddThis, but not because of any weakness of its infringement claims.  Rather, it was because

███████████████████████████████████████████████

████████████████████  This new information, while in no way weakening the strength of Rembrandt's infringement claim, ██████████████████████████ and so Rembrandt reasonably chose to settle with AddThis, thereby simplifying the case.

Facebook's suggestion that Rembrandt was never serious in alleging that the "Like" and "Share" buttons infringed, and simply dropped those claims once AddThis was out of the picture, is belied by Rembrandt's actions in this case.  Far from dropping "Like" and "Share" from the case once it settled with AddThis, Rembrandt continued to pursue its "Like" and "Share" claims against Facebook directly, devoting a substantial portion of its discovery effort toward that end, a point that Facebook concedes.  Indeed, dozens of pages of Rembrandt's infringement expert's report were devoted to her analysis of infringement by Facebook's "Like" and "Share" buttons.

3

Rembrandt's decision to ultimately drop its claims related to "Like" and "Share" was not the result of any weakness in its infringement case, but instead came about after a review of Facebook's ***invalidity*** evidence, which Rembrandt saw for the first time only during expert discovery.

The remainder of Facebook's criticisms merit little discussion.  Facebook complains that Rembrandt originally asserted a large number of claims in this case, and only reduced them after ordered to do so by the Court.  But there is nothing extraordinary about a patentee waiting until after discovery to reduce the number of asserted claims, a common practice in patent litigation.

Nor is there anything extraordinary about the extent of discovery in this case, another issue raised by Facebook.  This was a complicated case involving Facebook's complex and constantly evolving social networking system and a Facebook business model that made conventional approaches to calculating damages difficult to apply.  In response to requests for technical information about its system, Facebook produced over a million lines of poorly documented computer source code, forcing Rembrandt to seek additional document production, including email production, in an effort to decipher it.  Facebook's suggestion that there were too many depositions in the case ignores the fact that Facebook identified, and forced Rembrandt to depose, eight different Rule 30(b)(6) witnesses to cover basic technical information about the Facebook system.  Moreover, Facebook has not identified any deposition that was unnecessary or duplicative given the issues at play in the case.  Facebook's discovery burden, while not insignificant, was hardly beyond the norm for a case of this nature.

In sum, while this was a hard fought case, it was not an exceptional one in any legally relevant sense.  None of the legal positions taken by Rembrandt in this case were objectively unreasonable, nor were any of its litigation tactics.  Under such circumstances, it is not

appropriate for Facebook to be awarded attorney's fees.  Accordingly, Facebook's motion for fees should be denied.

## II.      ARGUMENT

### A.      Even Under *Octane Fitness* an Award of Fees is Only Appropriate in the Rare Case in which the Losing Party Acted Unreasonably

Under the "American Rule" that governs litigation in United States courts, defense of reasonable legal claims is, in most instances, a cost of doing business.  *Alexander v. Chesapeake, Potomac, and Tidewater Books, Inc.*, 60 F. Supp. 2d 544, 551 (E.D. Va. 1999) (Ellis, J.).  Thus, "it is the general rule in this country that unless Congress provides otherwise, parties are to bear their own attorney's fees."  *Fogerty v. Fantasy, Inc.*, 114 S. Ct. 1023, 1033 (1994).  Even where, as in patent cases, district courts are given discretionary authority to issue an award of attorney's fees, such authority is reserved for "exceptional" cases—namely those "rare" instances in which "unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force" makes an award of attorney's fees appropriate.  *Octane Fitness LLC v. ICON Health and Fitness, Inc.*, 134 S. Ct. 1749, 1753, 1756 (2014).

If a court finds that a case is exceptional, it may, but is not required to, award attorney's fees.  *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986).  In determining whether to award attorneys' fees in an exceptional case, the trial judge considers "the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser."  *Id.*

Under *Octane Fitness*, a prevailing defendant can establish that a case is "exceptional" by showing that the case "stands out from others" in one of two ways:  (1) with respect to the substantive strength of a party's litigating position; or (2) the unreasonable manner in which the

case was litigated.  *Octane Fitness LLC*, 134 S. Ct.  at 1756.  Thus, for example, where the

patentee is found to have committed inequitable conduct, a fee award may be appropriate.

*Intellect Wireless, Inc. v. Sharp. Corp.*, ___ F. Supp. 2d ___, 2014 WL 2443871, at *9 (N.D. Ill.

May 30, 2014).  So too when the plaintiff's claims are "objectively baseless," or "frivolous."

*Classen Immunotherapies, Inc. v. Biogen Idec*, 2014 WL 2069653, at *6 (D. Md. May 14, 2014)

(awarding fees for objectively baseless claim); *Precision Links, Inc. v. USA Prods. Grp., Inc.*,

2014 WL 2861759 (W.D. N.C. June 24, 2014) (same); *Home Gambling Network v. Piche*, 2014

WL 2170600 (D. Nev. May 22, 2014) (awarding fees where plaintiff (a) attempted to assert a

method claim for activities entirely outside the United States; (b) attempted to assert a patent it

did not own; and (c) engaged in patent misuse); *Lumen View Tech., LLC v. Findthebeset.com,

Inc.*, ___ F. Supp. 2d ___, 2014 WL 2440867, at *6 (S.D. N.Y. May 30, 2014) (awarding fees

where claims were "frivolous" and "objectively unreasonable" and were brought only to extract

a nuisance settlement).

By contrast, a mere finding that the plaintiff has a losing case, even if determined on

summary judgment, is not a sufficient basis to award fees.  *See EON Corp. IP Holdings, LLC v.

FLO TV Inc.*, 2014 WL 2196418 (D. Del. May 27, 2014) (declining to award fees under *Octane

Fitness* after granting summary judgment that claims were invalid); *CreAgri, Inc. v. Pinnaclife,

Inc.*, 2014 WL 2508386 (N.D. Ca. June 3, 2014) (same); *Bianco v. Globus Med., Inc.*, 2014 WL

1904228 (E.D. Tex. May 12, 2014) (Bryson, J., sitting by designation) (rejecting fee award under

*Octane Fitness* against plaintiff with unsuccessful inventorship claim).

Furthermore, a court's denial of summary judgment, while not dispositive, is a strong

indication that the plaintiff's claims were objectively reasonable and suitable for resolution at

trial.  *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 875 (Fed. Cir. 2010) ("[T]he district

court's denial of summary judgment of noninfringement reflects the belief that it was reasonable" for the plaintiff to have prosecuted its claim); *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysgteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010) ("A party is entitled to rely on a court's denial of summary judgment . . . as an indication that the party's claims were objectively reasonable and suitable for resolution at trial.").

### B.     This Was Not an Exceptional Case Under *Octane Fitness*

With these legal principles in mind, we turn to the facts of this case.  As we show, neither justification for an award of fees—an unusually weak case, or unreasonable litigation conduct— are present here.

#### 1.     Rembrandt's Prosecution of this Suit Was at All Times Reasonable and Based on Substantially Justified Legal Theories

##### a.     Rembrandt Filed This Case in Good Faith

Under the United States patent system, inventors are granted the exclusive right to practice their inventions for a limited period of time, and to seek damages from those who practice their inventions without authorization.  By granting such rights to inventors, the patent system incentivizes innovation, and encourages inventors to publicize and exploit their inventions.  Patent rights, however, are not self-executing.  Patent litigation is an expensive, technically arcane and time-consuming process, and most inventors, especially those without substantial financial capital, lack the expertise and resources to enforce patent rights on their own.  Companies like Rembrandt, which offer their expertise and financial resources to assist inventors in enforcing their patents, play an important and valuable role in making the patent system work for all inventors, and for our nation as a whole.

Rembrandt filed this case in February of 2013, after having conducted hundreds of hours of due diligence to establish that Facebook, and its co-defendant AddThis, were infringing the

7

asserted claims of the two patents-in-suit.  The patents had been owned by Aduna, the Dutch

company founded by their late inventor, Jos van der Meer, and now run by his widow and

brother.  Contrary to Facebook's suggestion, Rembrandt did not "induce" Aduna to sell the

patents-in-suit because it "spotted an opportunity" to sue Facebook.  Rather, it was Aduna—

believing that the van der Meer patents were being infringed—which sought out Rembrandt's

assistance.[3]  It was Aduna, not Rembrandt, which first concluded that Facebook and AddThis

were likely using the van der Meer inventions.

Rembrandt's original complaint included three distinct counts alleging infringements of

the van der Meer patents.  The first count related to infringement by Facebook's system that

allows users to receive and interact with Facebook diary pages, such as Newsfeed and Timeline.

Rembrandt alleged that this system, which entailed the use of Facebook's BigPipe diary program

and the display of privacy level information, infringed at least certain claims of the van der Meer

patents.  (Original Complaint, Dkt. No. 1, at ¶¶ 26-27.)  These claims were referred to in this

case as the "diary" claims.

The second and third counts in Rembrandt's complaint described infringing technologies

that allowed Facebook's users to "Like" and "Share" online content, and to transfer the URLs for

that content to a user's Facebook page.  One of these technologies was provided by a company

called AddThis—Facebook's original co-defendant in this case—and the other was provided

directly by Facebook.  (*Id.* at ¶¶ 45-46 & 69-70.)  The claims covering these features have been

referred to in this case as the "transfer" claims.

---

[3] Ex. 1 (R00249450) to Mann Decl. (showing Mr. Christian LaPointe, attorney for Aduna, seeking out Rembrandt's assistance on the patent matter).

**b.      Rembrandt Reasonably Scaled Back its Infringement Claims During the Course of Discovery**

Rembrandt filed its complaint against Facebook and AddThis only after having conducted an in-depth factual investigation to determine—to the extent possible without the benefit of discovery—that all three counts described substantial, and economically significant, infringements of the van der Meer patents.  As often happens in patent litigation, however, Rembrandt learned certain things during discovery that caused it to narrow the focus of its case.

The first thing that Rembrandt learned related to AddThis, and the economic significance of AddThis' infringement.  While discovery confirmed that AddThis did, as Rembrandt had alleged, provide "Like" and "Share" functionality to millions of Facebook users—thus validating Rembrandt's infringement allegations—it also revealed that this aspect of AddThis' infringement was not ███████████████████████████████████.  Rather, as explained by Robert van Niman, AddThis' CFO, user activity relating to Facebook was "███████████████ ███████████████████"[4]  Since AddThis did not ███████████████████ ████████████████████ Rembrandt reasonably concluded that a modest settlement with AddThis, rather than continued litigation, made sense.[5]  Rembrandt finalized its settlement with AddThis in August, 2013.

The second thing that Rembrandt learned in the course of discovery was the factual basis of Facebook's affirmative defense against Rembrandt's assertion of the "transfer claims"— namely Facebook's contentions that those claims were invalid in view of the prior art.  It was not until the commencement of expert discovery in this case that Rembrandt learned for the first time

---

[4] *See* Van Niman Dep. at 71:1-79:4 (attached as Ex. 2 to Mann Decl.); Allen Dep. at 77:14-78:7 (attached as Ex. 3 to Mann Decl.).

[5] *See* Malackowski Rep. at 66 & n.339 (attached as Ex. 4 to Mann Decl.).

of the specific set of prior art references, and invalidity arguments, that Facebook intended to

make regarding the "transfer" claims.  After evaluating those arguments, Rembrandt made the

determination not to further pursue the "transfer" claims in this case.  Thus, far from engaging in

a "scorched earth" litigation strategy, Rembrandt very reasonably reduced the scope and

complexity of this case in view of what it learned during discovery.[6]

     Notwithstanding Rembrandt's determination to withdraw its "transfer" claim

infringement allegations against AddThis and Facebook, Rembrandt completed expert discovery

with what it believed to be a substantial and quite valuable claim against Facebook with respect

to the remaining "diary" claims.  This assessment was reinforced when this Court rejected

Facebook's efforts to have those claims thrown out on summary judgment.  The Court's ruling

made clear to Rembrandt that, at the very least, its claims were trial worthy.  *See Medtronic*

*Navigation*, 603 F.3d at 954 ("A party is entitled to rely on a court's denial of summary

judgment . . . as an indication that the party's claims were objectively reasonable and suitable for

resolution at trial.")  Indeed, as became apparent at trial, Facebook did not seriously dispute that

all but one of the diary claim limitations were present in the Facebook system.  And as to the one

disputed limitation—requiring the combining of content and page design by the diary program to

generate a cohesive diary page—Rembrandt believed, and continues to believe, that it has the

better argument.  (*See* Rembrandt's Mot. for JMOL, Dkt. No. 550.)

---

[6] Any suggestion by Facebook that Rembrandt was never serious about its "transfer" claim allegations, and included them only to drag AddThis into the case, is belied by Rembrandt's undisputed actions.  As Facebook admits, much of the discovery that Rembrandt took in the case was directed to investigating the "transfer" claims that were eventually dropped.  Moreover, Rembrandt's infringement expert report, which was prepared after AddThis was dismissed from the case, includes dozens of pages devoted solely to infringement of the transfer claims by Facebook.  *See* Golbeck Infringement Rep. at 137-194 (attached as Ex. 5 to Mann Decl.).

### c.      Rembrandt Presented Reasonable Damages Theories that Were Well Grounded in Federal Circuit Precedent

Facebook has not alleged, and cannot plausibly contend, that there was anything unreasonable about the "diary" claim infringement allegations that Rembrandt eventually tried to the jury.  Rembrandt's claims were supported by extensive testimony from an eminently qualified expert and, as noted above, Facebook's effort to eliminate them on summary judgment was rejected by this Court.[7]

Instead, Facebook has grounded its fees motion largely on disparagement of Rembrandt's damages case, and the manner in which Rembrandt prosecuted it.  Facebook castigates Rembrandt for seeking an "astronomical" royalty award that was both "unhinged from the facts of the case" and legally illegitimate, and suggests that there was something wrong with Rembrandt's efforts—in the wake of the Court's *Daubert* ruling and the Federal Circuit's decision not to review it—to clarify what alternative damages evidence Rembrandt would be permitted to present.  But Facebook's criticisms are misplaced.  While it is true that Rembrandt's original damages theory was rejected by this Court, it nonetheless represented a good faith effort to apply the Federal Circuit's damages jurisprudence to the specific facts of this case.  Similarly, while the Court ultimately rejected Rembrandt's request to put in an alternative damages theory, ample precedent from the Federal Circuit and other district courts would have supported such a request, and it was entirely reasonable for Rembrandt to make it.

Turning first to Rembrandt's original damages theory, we note at the outset that, having rejected that theory under *Daubert*, the Court nonetheless conceded that it was one on which "there is substantial ground for difference of opinion."  (Order, Dkt. No. 365, at 2.)  That ground

---

[7] Moreover, as set forth in Rembrandt's Motion for JMOL (Dkt. No. 550), Rembrandt contends that the undisputed evidence presented to the jury demonstrates infringement of the asserted claims, and fails to establish that they are invalid.

is not difficult to discern. While the Federal Circuit has clearly and repeatedly emphasized that apportionment of the damages base should be to the "smallest saleable ***patent practicing unit***," *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (emphasis added), this Court reasoned instead that Rembrandt should have apportioned the damages base to revenues attributable to BigPipe and Audience Symbol, neither of which is, by itself, a patent practicing unit. But in making this ruling, the Court relied on case law suggesting the appropriateness of apportioning below the smallest ***saleable*** unit, and never attempted to reconcile it with the Federal Circuit's "patent practicing unit" jurisprudence.[8]

In view of this unresolved contradiction between the Court's *Daubert* ruling and Federal Circuit precedent, Rembrandt should not be faulted for having proposed the damages theory that it did. Facebook's business model—in which the claimed invention is offered free to users as part of a highly integrated web site that is supported by advertising—made application of the Federal Circuit's damages precedents less than straightforward. Lacking any precedent with directly analogous facts, Rembrandt made a good faith effort to conform its analysis to the Federal Circuit's requirements—identifying what it understood to be the smallest patent practicing unit, and attempting, with the necessarily imprecise tools that were available to it, to apportion Facebook's revenue stream to each unit appropriately. While the Court ultimately disapproved of Rembrandt's methodology, that methodology was hardly unreasonable in view of the current state of the law.

---

[8] The Court also justified its ruling on the principle that a royalty award should only compensate for the "contribution of the claimed invention." (Mem. Op. & Order, Dkt. No. 350, at 12.) But the contribution of the claimed invention—*i.e.*, its value relative to non-infringing elements of the accused system—is reflected in the royalty rate, not the base. (Order of Federal Circuit, Dkt. No. 368, at 6, n.2.) However, while Facebook challenged Mr. Malackowski's royalty rate calculation, the Court held that, except for one overlapping issue with the base, any alleged weaknesses could be addressed through cross-examination.

Nor was it unreasonable for Rembrandt to offer alternative damages theories for use at trial, once the Federal Circuit declined review this Court's *Daubert* ruling.  This was so for a number of reasons.  First, it is quite commonplace for district courts, having rejected all or a portion of an expert's report under *Daubert*, to permit the expert to submit a revised report that corrects the perceived errors in the original one.[9]  Indeed, as the Federal Circuit noted in its order denying review, "the rules [governing the reliability of damages evidence] are not so precise in their application or scope as to make a single opportunity for compliance clearly or always enough."  (Order of Federal Circuit, Dkt. No. 368, at 7.)  The Federal Circuit also noted that, given the passage of time during which Rembrandt's Section 1292(b) appeal was pending, the original rationale for refusing Rembrandt the opportunity to present an alternative theory—that trial was "scheduled to commence in less than two working days"—was no longer operative. (*Id.* at 6.)

Moreover, intervening authority—the Federal Circuit's *Apple v. Motorola* decision— provided further guidance that made it all the more appropriate for the Court to reconsider its earlier ruling striking the Malackowski report.[10]  As the *Apple* Court held, it was error for the

---

[9] *See, e.g.*, *Virnetx Inc. v. Cisco Sys.*, No. 6:10-CV-417, 2013 U.S. Dist. LEXIS 28223, at *15-16 (E.D. Tex. Mar. 1, 2013) (granting the defendants motion to exclude the expert opinion of plaintiffs damages expert on the issue of a reasonable royalty and explaining that "if VirnetX wishes to present Mr. Weinstein's reasonable royalty analysis at trial, Mr. Weinstein must amend his report.  If Mr. Weinstein does amend his report, Cisco shall be afforded the opportunity to depose Mr. Weinstein before the trial begins."); *Fujitsu Ltd. v Belkin Int'l*, No. 10-CV-03972-LHK, 2012 U.S. Dist. LEXIS 164410, at *26 (N.D. Cal. Nov. 16, 2012) (giving expert an opportunity to supplement his report on royalty rate issue); *Dataquill Ltd. v High Tech Computer Corp.*, No. 08cv543–IEG(BGS), 2012 U.S. Dist. LEXIS 53164, at *4-5 (S.D. Cal. Apr. 16, 2012) (noting that the court had struck portions of the damages expert's initial report and then provided him with an opportunity to amend).

[10] More recently—since the *Apple* case—another opinion has issued that further supports the reasonableness of Rembrandt's position.  *See Thinkoptics, Inc. v. Nintendo of Am., Inc.*, Case No. 6:11-cv-465, Dkt. No. 435, at 4 (E.D. Tex. June 21, 2014) (excluding defendant's damages expert because he did not include the value of all claimed elements in the royalty base).

district court in evaluating the reliability of a damages analysis to focus on the value of a single limitation of a claim—the supposed point of novelty—rather than on "the full scope of infringement." ___ F.3d ___, at *22 (Fed. Cir. April 25, 2014).  In the present case, the Court focused on the value of BigPipe and Audience Symbol, each of which corresponded to a specific claim limitation, without considering the value of the claimed invention as a whole, which corresponded to the accused Facebook pages that were the basis of apportionment in the Malackowski report.

Finally, it is worth noting that while Facebook blames Rembrandt for the flurry of 11 damages related briefs that it filed in the weeks prior to trial, much of that briefing was related either to Facebook's unsuccessful effort to strike Rembrandt's jury demand (Dkt. Nos. 379 & 413), or was occasioned by the Court's multiple requests for further briefing on issues raised by Facebook (Dkt. Nos. 434, 444, & 465).[11]  While the Court ultimately ruled in favor of Facebook, the question of what kind of damages proof, if any, Rembrandt would be allowed to present at trial was clearly not an easy one to resolve.  Rembrandt's efforts to seek clarity on that issue prior to trial should not be faulted.

### d.     Rembrandt Otherwise Prosecuted its Case in a Reasonable Fashion

In addition to attacking Rembrandt's handling of its damages case, which, as we have shown above, was entirely reasonable, Facebook attempts to bolster its claim for attorney's fees with a hodgepodge of other misplaced criticisms of Rembrandt's litigation conduct.  None of these criticisms stand up under scrutiny.

---

[11] Rembrandt actually only filed one motion on the issue.  (*See* Rembrandt's Motion for Pretrial Relief, Dkt. No. 377.)

**"Rembrandt's Complaint and Publicity Blitz":**  Facebook appears to fault Rembrandt for (a) having filed a complaint that was broader than the case that was ultimately tried and (b) accurately discussing that complaint with the press.  (*See* Dkt. No. 541, at 4-5.)  But we have already described the (perfectly legitimate) reasons why the case Rembrandt tried was narrower than what it originally brought.  And given Facebook's attack on Rembrandt for "over litigating" the case, it is difficult to understand why Rembrandt's decision to voluntarily narrow the case would be a cause for criticism.  Nor does Facebook explain why giving accurate information to the press should, in any way, justify an award of attorney's fees in this case.  In fact, it is extremely common for companies, including Facebook,[12] to issue press releases concerning litigation.

**"Rembrandt's Over-Litigation of its Case":**  Facebook accuses Rembrandt of engaging in "scorched earth" tactics in litigating the case, but Facebook's specific complaints about Rembrandt hardly live up to this hyperbolic description.  First, Facebook complains that Rembrandt asserted a large number of claims at the outset of the case, and did not reduce them until after the Court's *Markman* order.  But asserting a large number of claims at the outset of the case—with the intent to reduce the number after claim construction or at the close of discovery—is hardly evidence of a "scorched earth" approach; it is standard practice in patent cases.[13]

Nor did Rembrandt take excessive discovery in this case, as Facebook alleges.  Facebook complains that Rembrandt supposedly forced it to produce millions of pages of documents, and

---

[12] *See, e.g.*, PX 123 (showing in the un-redacted version a press release—or a blog post—discussing the FTC agreement that Facebook had reached concerning the litigation brought by the FTC against Facebook) (attached as Ex. 6 to the Mann Decl.).

[13] *See, e.g.*, Eastern District of Texas Model Order Focusing Patent Claims and Prior Art (attached as Ex. 7 to Mann Decl.).

then admitted that it had no intent to review them all.  This characterization is misleading at best.
The Court itself ordered that production after determining that Rembrandt's request was
appropriate.  (Dkt. No. 114.)  Moreover, far from "admitting to Facebook that it was not going to
review" the documents, what Rembrandt actually said was that it intended to perform iterative
electronic searches on the documents it received, a standard practice in modern litigation.[14]

Finally, Facebook takes issue with the number of depositions of Facebook employees that
Rembrandt took in this case.  But this was a technically complex case involving numerous facets
of the Facebook system.  Facebook produced over a million lines of poorly documented source
code in this case, which was the primary documentary evidence of how the Facebook system
worked.  Consequently, Rembrandt was forced to take numerous depositions of Facebook
technical employees to complete its understanding of Facebook's technical design.  Notably,
Facebook (a) never objected during discovery that the number of depositions was excessive;
(b) never sought a protective order from the Court; and (c) even now has not identified any
depositions that were unnecessary, given the issues that were in play in the case at the time they
were taken.  Facebook's observation that, in retrospect, many of those depositions were not
needed for trial, hardly takes this case out of the realm of the ordinary.

**"An Unnecessary Jury Trial":**  Facebook criticizes Rembrandt for taking this case to
trial, arguing that "given that all evidence of damages was excluded and the potential for a
permanent injunction was essentially non-existent, a reasonable litigant would have stipulated to
judgment and taken the damages issues up to the Federal Circuit for appeal."  (Dkt. No. 541, at
10.)  Of course, Facebook has it exactly backwards.  Rembrandt actively sought to have the

---

[14] *See, e.g.*, Gregory L. Fordham, *Using Keyword Search Terms in E-Discovery and How They Relate to Issues of Responsiveness, Privilege, Evidence Standards, and Rube Goldberg*, 15 Rich. J.L. & Tech. 8 (2009) (discussing the increase and use of electronic searching to review e-discovery).

damages issue taken up on appeal without the need for a trial: it was at Rembrandt's behest that this Court certified the issue for an interlocutory appeal.  However, once that appeal was refused, Rembrandt's only avenue to appellate review was to litigate this case through trial.  Facebook's argument that Rembrandt could have stipulated to judgment is belied by its lack of any explanation as to how Rembrandt could have done this without waiving its substantive claim.  Indeed, this Court expressly rejected Facebook's argument that Rembrandt's inability to put on a damages case at trial rendered a jury trial unnecessary.[15]  Rather, as the Court recognized, a jury verdict in Rembrandt's favor would have entitled Rembrandt to equitable relief (at least in the form of a running royalty),[16] and so there could be no final judgment until liability was determined.[17]

### 2.  Facebook's Disparagement of Rembrandt Does Not Make This an Exceptional Case

As the foregoing description makes clear, Rembrandt's actions, both in bringing this suit and in prosecuting it through trial, were at all times well within the bounds of reasonable litigation practice.  At no time did Rembrandt persist in prosecuting any legal theories that lacked a reasonable justification in the law and evidence.  To the contrary, Rembrandt voluntarily

---

[15] (*See* Order, Dkt. No. 431 (denying Facebook's motion to strike the jury demand).)  Moreover, in its Order denying the parties' request for an interlocutory appeal, the Federal Circuit suggested that the proper action would have been to decide liability and then appeal the damages issue with the liability issue.  (*See* Order of Federal Circuit, Dkt. No. 368, at 5 ("There is good reason to be wary of any action that would broadly invite interlocutory review of a record-specific damages ruling like the one at issue here, rendered before any determination of liability.").)

[16] (*See* Dec. 6, 2013 Hearing Tr., 17:22-25 ("But I think Mr. Hillman is clearly correct in one respect, which is that there is the issue of future royalties, and that is something the Court could do without a jury.") (attached as Ex. 8 to Mann Decl.).)

[17] Facebook also criticizes the strength of the case Rembrandt put on at trial.  As explained in Rembrandt's motion for JMOL (Dkt. No. 550), the unrebutted trial evidence actually supports Rembrandt's claims as a matter of law.

narrowed the scope of the case—dismissing one defendant, and eliminating accused features—

when the evidence no longer justified maintaining them in the case.  Similarly, at no time did

Rembrandt litigate this case in an unreasonable manner.  The scope of Rembrandt's discovery

was either expressly approved by the Court (in the case of document requests) or never objected

to by Facebook (in the case of depositions).  In all cases, the discovery requests were reasonable

under the circumstances.  So too was Rembrandt's initial identification of a large number of

claims, subject to later reduction, a standard practice in patent cases.  In sum, there was nothing

in this case that made it "stand[] out from others with respect to the substantive strength of

[Rembrandt's] litigating position . . . or [any alleged] unreasonable manner in which the case was

litigated."  *Octane Fitness*, 134 S. Ct. at 1756.

      In arguing for exceptionality, Facebook paints a caricature of Rembrandt (as an

unscrupulous patent troll) and its prosecution of this case (as a scorched earth effort) that bears

little resemblance to reality.  Nothing in the record suggests, contrary to Facebook's innuendo,

that Rembrandt took on this case for other than a legitimate reason—namely, to enforce Aduna's

patent rights against defendants that Rembrandt sincerely believed to be infringing.  Naturally,

Rembrandt would not have brought the case if it did not believe that there were sufficiently large

damages at stake to make it economically rational to litigate.  However, Facebook's suggestion

that Rembrandt persisted in demanding an inflated royalty out of some desperate need to pay off

stakeholders in the litigation is completely unfounded.

      Nor is there any basis for Facebook's suggestion that Rembrandt's litigation strategy was

to "wear down Facebook and its resolve to fight the litigation."  As described above,

Rembrandt's discovery requests, and the phasing of its asserted claims, was well within the

norms of good faith patent litigation practice.  Moreover, the idea that Rembrandt was merely

gunning for a quick settlement in this case is inconsistent with that facts:  the parties barely

discussed settlement, did not attend a mediation, and Rembrandt chose to proceed with trial, at

great expense to Rembrandt and its counsel, knowing full well that a jury verdict would not even

result in a money judgment in the near term.  Such behavior is indicative of a party that believes

in its case and is prepared to litigate it for the long run, not one who is looking for a cost

avoidance settlement.

Facebook's attempt to paint Rembrandt's claims against AddThis as a ruse to secure

venue is equally groundless.  In the first place, AddThis was identified along with Facebook as

potential defendants when Aduna's attorney first brought the van der Meer patents to

Rembrandt's attention.[18]  Nevertheless, Facebook implies that Rembrandt could not have been

serious when it described AddThis as "the maker of the system" and "equally involved [with

Facebook] in the infringement issue," since AddThis was eventually dropped from the case.

(Dkt. No. 541, at 5.)  What Facebook ignores is that there were three distinct Counts in the

Second Amended Complaint, and only one of them (Count II) accused the system made by

AddThis.  When AddThis was dropped from the case, the other two counts were unaffected, and

there is no contradiction between Rembrandt's characterizations of AddThis and its continuing to

prosecute Counts I and III against Facebook.

Finally, we come to what Facebook calls the "centerpiece" of its exceptionality argument,

its critique of Rembrandt's damages case.  Facebook focuses only on the size of Rembrandt's

royalty calculation ("greed writ large"), and the fact that it was ultimately excluded, as if those

facts self-evidently establish that Rembrandt had no reasonable basis for making its claim.  The

one thing Facebook simply ignores is the actual legal merits of the *Daubert* issue.  As previously

---

[18] Ex. 9 (R00249470) to Mann Decl. (showing email from Aduna attorney Christian LaPointe
identifying AddThis as a potential defendant).

discussed, Facebook's insistence that apportionment must go to a unit smaller than the smallest

patent practicing unit is legally incorrect in Rembrandt's view and the Court itself has recognized

that there is "substantial ground for difference of opinion."  Under these circumstances, the mere

fact that Rembrandt asked for a large award based on a methodology that was rejected by the

Court is hardly grounds to consider this case exceptional.

### C.    Rembrandt Reserves the Right to Challenge the Size of Facebook's Fee Request Once Supporting Documentation Is Provided

Facebook argues that, in the event that the Court does order an award of attorney's fees, it

should be awarded a fee of approximately $5.8 million and non-taxable costs of $860,000.

Facebook has not, however, provided any documentation to support these numbers.  In the event

that the Court does order a fee award, Rembrandt reserves the right to challenge the amount of

the award in light of any documentation provided by Facebook.

### D.    This Court Should Defer Ruling on this Motion Until Rembrandt's Other Post-Trial Motions Are Resolved

Rembrandt has filed a motion for judgment as a matter of law pursuant to Federal Rule of

Civil Procedure 50 and a motion for a new trial pursuant to Federal Rule of Civil Procedure 59.

If Rembrandt is successful on either of these motions, then Facebook will no longer be the

prevailing party.  As such, Rembrandt respectfully submits that in the interest of efficiency and

conservation of resources, the Court should exercise its discretion to defer its decision on

Facebook's motion for attorney's fees and litigation expenses and the bill of costs until at least

after these post-trial motions are resolved.  But given the posture of this case, Rembrandt

respectfully submits that the more efficient course is to delay ruling until after the merits are

finally resolved on appeal.  *See Reed v. Health and Human Services*, 774 F.2d 1270, 1277 (4th

Cir. 1985), *rev'd on other grounds*, *Lukhard v. Reed*, 481 U.S. 368 (1987); *CSX Transp., Inc. v.

Peirce*, Civ. No. 5:05CV202, 2013 U.S. Dist. LEXIS 137552, at *10 (N.D. W. Va. Sep. 25,

2013) ("In the interest of judicial economy, this Court finds that holding CSX's motion for attorneys' fees and litigation expenses and bill of costs in abeyance pending the resolution of any appeal of the underlying jury verdict or other resolution of this civil action is the proper course of action at this time.").

## III.      CONCLUSION

For the foregoing reasons, Facebook's Motion to Declare This an Exceptional Case and for Attorney's Fees and Expenses Pursuant to 35 U.S.C. § 285 should be denied.

Dated: July 18, 2014

Respectfully submitted,

FISH & RICHARDSON P.C.

By:  */s/ Daniel R. Gopenko*

Ahmed J. Davis (Va. Bar No. 43982)
Daniel R. Gopenko (Va. Bar No. 83932)
1425 K Street N.W., 11th Floor
Washington, D.C. 20005
Telephone: (202) 783-5070
Facsimile:  (202) 783-2231

Thomas M. Melsheimer
Rex A. Mann
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone:  (214) 747-5070
Facsimile:  (214) 747-2091

Robert E. Hillman
Lawrence K. Kolodney
One Marina Park Drive
Boston, MA 02110
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

John S. Goetz
601 Lexington Ave., 52nd Floor
New York, NY 10022
Telephone:  (212) 765-5070
Facsimile: (212) 258-2291

*Attorneys for Plaintiff Rembrandt Social Media
LP*

22

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of July, 2014, I will electronically file the foregoing **MEMORANDUM IN OPPOSITION TO FACEBOOK'S MOTION TO DECLARE THIS AN EXCEPTIONAL CASE AND FOR ATTORNEYS FEES AND EXPENSES** with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to the following:

Phillip E. Morton
Stephen R. Smith
Jonathan G. Graves
**Cooley LLP**
Reston Town Center
11951 Freedom Drive
Reston, VA 20190
Telephone: 703-456-8000
Facsimile: 703-456-8100

Michael G. Rhodes
**Cooley LLP**
4401 Eastgate Mall
San Diego, CA 92121
Telephone: 858-550-6000
Facsimile: 858-550-6420

Mark R. Weinstein
Heidi Lyn Keefe
**Cooley LLP**
5 Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94304
Telephone: 650-843-5000
Facsimile: 650-849-7400

*Counsel for Defendant Facebook, Inc.*

_/s/ Daniel R. Gopenko_
Daniel R. Gopenko

23